**SO ORDERED.**

**SIGNED this 16 day of October, 2020.**



_____
**David M. Warren
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

IN RE:                                                                    CASE NO. 19-00688-5-DMW

**DONNA PETTY WHITFIELD**

CHAPTER 13

**DEBTOR**

## MEMORANDUM OPINION REGARDING MODIFICATION OF CHAPTER 13 PLAN

This matter came on to be heard upon the Trustee's Motion to Modify Chapter 13 Plan ("Motion to Modify") filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on June 30, 2020 and the Debtor's Response to Trustee's Motion to Modify Chapter 13 Plan ("Response") filed by Donna Petty Whitfield ("Debtor") on July 21, 2020.  The court conducted a hearing in Raleigh, North Carolina on September 2, 2020.  Michael B. Burnett, Esq. appeared for the Trustee, and Cort I. Walker, Esq. appeared for the Debtor.  Based upon the pleadings, the testimony of the Debtor and other evidence presented, the arguments of counsel and the case record, the court found that the Motion to Modify should be allowed.  The court entered an Order Modifying Chapter 13 Plan on September 9, 2020, and in support of that Order, the court makes the following findings of fact and conclusions of law:

Background

1. The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on February 15, 2019 ("Petition Date"). The court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 1302, and the Trustee conducted the Debtor's meeting of creditors ("Meeting of Creditors") required by 11 U.S.C. § 341 on March 18, 2019.

2. The Debtor stated on her schedules of assets filed with the petition that she was the beneficiary of her parents' trust ("Trust"), and her mother was living but her father was deceased. The Debtor attributed no value to her interest in the Trust, and the Debtor stated elsewhere on her schedules that the Trust owed her the amount of $13,000.00 for reimbursement of funeral expenses. At the Meeting of Creditors,[1] the Trustee asked the Debtor, "Do you anticipate any changes in either income or expenses that are virtually certain to happen during your case?" She replied, "No sir, I usually yearly get a raise at work, but it's never guaranteed." The Debtor did not mention the possibility of her income increasing due to receipt of funds from the Trust.

3. At the Meeting of Creditors, the Trustee and the Debtor also discussed the Debtor's recent receipt of an inheritance from the Debtor's father's decedent estate.[2] The Debtor's counsel explained that proceeds were realized from the sale of property owned by the Debtor's father, and the Debtor stated as follows:

> It went into the estate to pay the attorney bills, his funeral bill . . . . My mom and I were supposed to split it [the bill], but she didn't have any money, and so I absorbed it out of my inheritance and paid for everything, and the . . . marital trust she's in actually owes me money, but I'm not sure if I'll ever see that.

---

[1] The Trustee presented a portion of the recording of the Meeting of Creditors at the hearing on the Motion to Modify.
[2] The Debtor filed an amended Statement of Financial Affairs for Individuals Filing for Bankruptcy on March 20, 2019 to declare that she had received an inheritance of $89,618.16 in 2018.

2

The Debtor told the Trustee that she spent the balance of the inherited funds prior to the Petition Date.

4.    On the Petition Date, the Debtor owned a 2015 Hyundai Sonata ("Hyundai") with a value of $12,025.00 according to the Debtor's Schedule A/B. The Debtor had gross monthly income in the amount of $6,135.96 on the Petition Date.[3]

5.    The court confirmed the Debtor's Chapter 13 Plan ("Plan") on April 26, 2019. The Debtor has an applicable commitment period of five years pursuant to 11 U.S.C. § 1325(b)(4), and the Plan requires sixty monthly payments in the amount of $435.00. The Plan states that if the Debtor's estate were liquidated in a Chapter 7 case, holders of allowed unsecured claims would receive a total of $4,845.00. That amount is being paid to unsecured creditors through the Plan pursuant to 11 U.S.C. § 1325(a)(4); however, the Trustee asserts that general unsecured claims in this case total $60,289.19.

6.    On May 19, 2020, the Debtor filed an Amended Motion for Permission to Purchase Property. That Motion stated that the Debtor had received $133,087.21 ("Trust Proceeds") from the Trust, and the Debtor desired to purchase a vehicle with a portion of those funds. On June 9, 2020, the court entered an Order allowing the Debtor to purchase a vehicle costing up to $39,000.00.[4] The Debtor testified at the hearing on the Motion to Modify that she purchased a 2020 Toyota RAV4 for the amount of $38,000.00 and spent a total of approximately $42,000.00

---

[3] The Debtor testified at the hearing on the Motion to Modify that she recently received an annual raise of approximately $2,000.00.

[4] The court's Order stated "The debtor may incur debt of up to $39,000.00 purchasing a vehicle." That language is part of a form order the court routinely uses when debtors seek court permission, pursuant to Local Bankruptcy Rule 4002-1(g)(5), to incur debt to purchase property. In this case, the Debtor sought permission pursuant to Local Bankruptcy Rule 4002-1(g)(6) to purchase a vehicle. Local Rule 4002-1(g)(6) states that "After the filing of the petition and until the plan is completed, a debtor shall not purchase any item of property of $10,000 or more with non-exempt assets without prior approval from the court." Debtors rarely have sufficient funds to purchase property of $10,000.00 or more without incurring additional debt, and the court does not often rule on motions filed pursuant to Local Rule 4002-1(g)(6). It appears the Clerk's office inadvertently entered the form order used for allowing motions to incur debt instead of entering an order allowing the Debtor to purchase a vehicle without incurring debt.

for the vehicle, related taxes, registration tags and a maintenance plan for the vehicle. The Debtor intends to retain the Hyundai for her daughter to drive when she reaches the age of sixteen in November 2020.

7. The Trustee filed the Motion to Modify after learning of the Debtor's receipt of the Trust Proceeds, requesting that the court modify the Plan to require a lump sum payment of $68,000.00[5] for the benefit of the Debtor's unsecured creditors.

8. The Debtor attached a copy of the Trust, entitled "Irrevocable Trust Agreement" and dated February 3, 2017, to the Response. The grantor of the Trust was the Debtor's father, John Carl Petty, and the introductory section of the Trust stated "Grantor desires to establish an irrevocable trust fund for the benefit of his spouse [the Debtor's mother], Shirley S. Petty [("Ms. Petty")], and his daughter, Donna Michele Petty Whitfield." Although the Debtor was named in the introductory section of the Trust, the income and principal of the Trust were to be managed and disbursed "for the exclusive benefit of . . . Shirley S. Petty, during her lifetime."

9. Article IV of the Trust contained the following provision ("Spendthrift Provision"):

> Except as otherwise provided herein, all payments of principal and income payable, or to become payable, to the beneficiary of any trust created hereunder shall not be subject to anticipation, assignment, pledge, sale or transfer in any manner, nor shall any said beneficiary have the power to anticipate or encumber such interest, nor shall such interest, while in the possession of the Trustee, be liable for, or subject to, the debts, contracts, obligations, liabilities or torts of any beneficiary.

10. The Trust terminated upon the death of Ms. Petty.[6] The Trust contained the following provision in Article II, Section 3 regarding distribution of the Trust's funds upon termination:

---

[5] The Trustee stated at the hearing that this amount would pay general unsecured creditors in full as well as the allowed attorney's fees owed to the Debtor's counsel, plus the Trustee's commission on those disbursements.

[6] Article II, Section 2 states "The Trust shall terminate upon the death of Grantor's spouse, SHIRLEY S. PETTY."

4

> Upon the termination of the Trust, the Trustee shall transfer, convey and deliver, freed and discharged of all trusts (except as set forth below [regarding the establishment of a separate trust for any issue of the Debtor under the age of twenty-five, in the event the Debtor did not survive termination of the Trust]), the principal, any accumulations thereto, and any accrued income, . . . [to the Debtor] DONNA MICHELLE PETTY WHITFIELD outright and free of trust.

11. The Trustee filed the Motion to Modify pursuant to 11 U.S.C. § 1329. Section 1329(a) states as follows:

> At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to [*inter alia*,] increase or reduce the amount of payments on claims of a particular class provided for by the plan.

11 U.S.C. § 1329(a)(1).

## Jurisdiction

12. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1). The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## Discussion

### *The Spendthrift Provision*

13. As a preliminary argument against the Motion to Modify, the Debtor asserted that the Trust Proceeds did not qualify as property of the Debtor's estate pursuant to 11 U.S.C. § 541(c)(2), due to the presence of the Spendthrift Provision in the Trust. The court was unpersuaded by that argument.

14. Section 541 identifies what property is included in a Chapter 13 debtor's estate, and 11 U.S.C. § 1306(a) expands the scope of § 541 to include "all property of the kind specified in

5

[11 U.S.C. § 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of [the Bankruptcy Code], whichever occurs first." 11 U.S.C. § 1306(a)(1).

15. The Trust Proceeds became a part of the Debtor's estate under § 1306(a), unless an exception within § 541 applies. Pursuant to § 541(c)(2), "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2). Under § 541(c)(2), "to the extent that a spendthrift provision protects a debtor's beneficial interest in a trust from alienation under state law, that spendthrift provision will also protect the interest from the debtor's creditors in bankruptcy by excluding the interest from the bankruptcy estate." *Wachovia Bank, N.A. v. Levin*, 419 B.R. 297, 300 (E.D.N.C. 2009), *aff'd*, 436 Fed. Appx. 175 (4th Cir. 2011). The Trustee did not challenge the validity of the Spendthrift Provision under North Carolina law, only the applicability of the Spendthrift Provision to the Trust Proceeds.

16. The Debtor cited in the Response *Levin v. Wachovia Bank*, 436 Fed. Appx. 175 (4th Cir. 2011), in support of her contention that the Spendthrift Provision applied to the Trust Proceeds. In that case, a Chapter 7 debtor was a beneficiary of a trust containing the following provision: "The interest of any beneficiary in the corpus or income of any trust shall not be subject to assignment, alienation, pledge, attachment, or claims of creditors and shall not otherwise be voluntarily or involuntarily alienated or encumbered by such beneficiary." 436 Fed. Appx. at 176. The trustee had sole discretion whether to distribute income and principal to the beneficiaries (including the debtor), and upon termination which would be triggered by the death of the debtor's father, the trustee would be required to distribute the remaining principal and retained income to the named beneficiaries. *Id.*

6

17. The debtor in *Levin* also was a beneficiary of a trust created by the debtor's grandmother through her last will and testament. *Id.* The debtor was entitled to ongoing distributions from the trust's income and would be entitled to his share of the trust's corpus upon reaching the age of forty-five years old. *Id.* at 176-77. That trust contained the following provision:

> I direct that all legacies and all shares and interests in my estate and any property appointed under this will, whether principal or income, while in the hands of my personal representatives, trustees or the guardians of property, shall not be subject to attachment, execution, or sequestration for any tort, debt, contract, obligation or liability of any legatee or beneficiary and shall not be subject to pledge, assignment, conveyance or anticipation.

*Id.* at 177. Both trusts were subject to Pennsylvania state law. *Id.* at 179.

18. The Fourth Circuit Court of Appeals determined whether the debtor's future remainder interests in the principal of the trusts were part of the debtor's bankruptcy estate. The Chapter 7 trustee argued that if a debtor holds an interest in the corpus of a spendthrift trust upon termination of the trust, "then those funds cannot, by the plain language of the trust, be subject to the spendthrift clause which necessarily must terminate with the trust." *Id.* at 181 (quoting the trustee's Brief). The court concluded that "Pennsylvania law protects remainder interests in the corpus of a trust if the spendthrift provision of the trust instrument so provides," and "by explicitly invoking the trusts' principal, the settlor here intended the spendthrift provisions to apply to the debtor's remainder interests therein." *Id.* at 181, 182.

19. The *Levin* case is distinguishable on at least two grounds. First, although the Spendthrift Provision applied to payment of the principal of the Trust, similar to the trusts at issue in *Levin*, the Debtor was not the beneficiary to the Trust. The Trust was to be managed for "the exclusive benefit" of Ms. Petty. The Spendthrift Provision only restricted transfers of interests in "payments of principal and income payable, or to become payable, to the beneficiary of any trust

7

created [under the Trust]," and that beneficiary was Ms. Petty.[7] Although the introductory section of the Trust referenced the Debtor and stated "Grantor desires to establish an irrevocable trust fund for the benefit of his spouse, Shirley S. Petty, and his daughter, Donna Michele Petty Whitfield," the terms of the Trust made clear that the Debtor was not a beneficiary of the Trust and held only a remainder interest.

20. The facts of this case are similar to a case distinguished by the *Levin* court, *Ginsburg v. Hilsdorf*, 30 Pa. D. & C.2d 384 (C.P. Alleghany Cnty. Pa. 1962). In that case, the provision at issue stated as follows:

> No sum payable by my Trustees under the provisions of the foregoing trust shall be pledged, assigned, transferred or sold, or in any manner whatsoever anticipated, charged or encumbered by the beneficiaries thereunder, or any of them, or be in any manner liable in the hands of my Trustees for the debts, contracts and engagements of the beneficiaries thereunder, or any of them.

30 Pa. D. & C.2d at 394-95. That court found that it was "clear that the intention of [the grantors was] to protect the *beneficiaries* of the trust. If they intended the spendthrift provision to protect the vested remainderman they could have said so." *Id.* at 395.

21. Second, even if the Debtor could be considered a beneficiary due to her remainder interest, the Trust, including the Spendthrift Provision, terminated by its own terms upon the death of Ms. Petty, and the Trustee was required upon termination to disburse the remaining corpus "outright and *free of trust*." (emphasis added). To the extent the Debtor's remainder interest was protected by the Spendthrift Provision prior to distribution from the trustee of the Trust, the Debtor received the funds free of trust and free of the protections of the Spendthrift Provision, which specifically governed funds "while in possession of the Trustee." *See also* N.C. Gen. Stat. § 36C-

---

[7] The court notes that if the Debtor had predeceased Ms. Petty and left issue, then under the terms of the Trust, new trust(s) would have been created for any beneficiary under the age of twenty-five, and the Spendthrift Provision would have remained effective as to those beneficiaries.

5-502(c) (2005) ("A beneficiary may not transfer an interest in a trust in violation of a valid spendthrift provision and, except as otherwise provided in this Article, a creditor or assignee of the beneficiary may not reach the interest or a distribution by the trustee *before its receipt by the beneficiary*.") (emphasis added); N.C. Gen. Stat. § 36C-5-502 official cmt. ("Unless one of the exceptions under this article applies, a creditor of the beneficiary is prohibited from attaching a protected interest and may only attempt to collect directly from the beneficiary after payment is made.").

22. The Debtor also cited *In re Newman*, 903 F.2d 1150 (7th Cir. 1990), in support of her argument that the Trust Proceeds did not become property of the estate upon distribution. In that case, the debtor was the beneficiary to two trusts that would "expire" when the debtor turned fifty years old. 903 F.2d at 1151. The debtor filed a Chapter 7 petition when he was forty-five years of age, and the court found that the corpus of the trust was excluded from the debtor's estate, noting that "Congress clearly exempted the corpus of spendthrift trusts that are valid under state law from the reach of creditors in bankruptcy proceedings." *Id.* at 1151, 1154. The court noted, though, that "[i]f the debtor were now older than 50, this approach [to include the corpus in the bankruptcy estate] would make sense." *Id.* at 1153. The *Newman* case does not support the Debtor's position in this matter.[8]

23. The Debtor argued that treating the Trust Proceeds differently upon distribution to the Debtor would encourage debtors to instruct trustees to retain funds to protect them from creditors. This argument was moot, because the Debtor already received the Trust Proceeds

---

[8] The Debtor also cited *In re Blount*, 438 B.R. 98 (Bankr. E.D. Tex. 2010) for a discussion of policy considerations behind protecting spendthrift trusts. In that case, though, the court was focused on the distinction between *inter vivos* trusts and testamentary trusts in the context of 11 U.S.C. § 541(a)(5)(A), concluding that *inter vivos* trust distributions received by a Chapter 7 debtor in the 180 days after filing a petition do not become part of the bankruptcy estate. 438 B.R. at 108.

outright and free of trust. The court was not being asked to determine whether the Debtor's remainder interest would be property of her estate if the trustee had violated the terms of the Trust and were withholding the Trust Proceeds from distribution. Many courts have held, though, that once a remainder beneficiary becomes entitled to the corpus of a trust, even while it is still in the possession of the trustee, those funds may also be reached by the beneficiary's creditors. *See Brent v. State Cent. Collection Unit*, 311 Md. 626, 636 (Md. Ct. App. 1988) (collecting cases).

24. Lastly, the Debtor asserted the court should compare the circumstances in this case to ones in which a debtor receives post-petition funds from an ERISA-qualified retirement plan or from a 401(k) retirement plan. Those circumstances were not sufficiently comparable to alter the court's decision in this matter. The court determined that the Trust Proceeds were part of the Debtor's estate pursuant to 11 U.S.C. §§ 541 and 1306.

*Modification Pursuant to 11 U.S.C. § 1329*

25. The court then turned to the standard for modification under § 1329(a). In the Fourth Circuit, a "party seeking modification [must] demonstrate[] that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007) (citing *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989)). This standard is implemented to preserve the doctrine of *res judicata* as it relates to the court's prior Order confirming the Plan. The Trustee, as the party seeking modification, bore the burden of proof. *In re Matusak*, No. 14-02032-5-SWH, 2017 Bankr. LEXIS 3166, at *8 (Bankr. E.D.N.C. Sept. 19, 2017).

26. At the hearing, the Trustee noted that the Trust Proceeds equaled over twenty-one times the Debtor's gross monthly salary as of the Petition Date, and their inclusion in the Plan

would increase the meager dividend to unsecured creditors to full payment of those claims. The receipt of the Trust Proceeds constituted a substantial change in the Debtor's financial condition.

27. The court also found that the Trust Proceeds were unanticipated. The Debtor referenced the Trust at the Meeting of Creditors and speculated that she may never be reimbursed by the Trust for funeral expenses she advanced on behalf of her mother. The Debtor also stated at the Meeting of Creditors that she did not expect any increase in income during the pendency of her case. The Debtor's testimony at the Meeting of Creditors did not indicate that she anticipated her mother's death during the term of her Chapter 13 case. The Debtor asserted in the Response that the

> trustee and creditors were put on notice of the Debtor's interest in the Trust and had an opportunity to investigate further or object to confirmation based on the disclosure. No party to the case objected to confirmation or pursued more information in light of the disclosure concerning the Trust. Hence, *res judicata* prevents the modification.

The Debtor could not use the barebones disclosure of the Trust on her schedules to preclude modification of the Plan. The Debtor attributed no value to her interest in the Trust[9] and provided no explanation of her interest on her schedules of assets. The burden should not be placed on the Trustee and creditors to have investigated the Debtor's interest in the Trust, especially under the circumstances of the disclosure the Debtor provided and in light of her testimony at the Meeting of Creditors.

28. A plan modification for one of the purposes listed in § 1329(a) must satisfy the confirmation requirements of 11 U.S.C. § 1325(a). 11 U.S.C. § 1329(b)(1). The Debtor asserted the Trustee could not meet his burden of proof on all elements of § 1325(a), specifically §

---

[9] Of course, that valuation was accurate on the Petition Date, because as long as Ms. Petty was living, the Debtor did not have a present interest in the corpus of the Trust beyond her future remainder interest; however, if the Debtor anticipated that her mother might die during the pendency of her case, then the Debtor could have noted that information and the amount of the Trust funds on her schedules of assets.

11

1325(a)(1) concerning compliance with other applicable provisions of Title 11, § 1325(a)(3) concerning good faith and § 1325(a)(6) concerning feasibility. The proposed modification did not extend the repayment term beyond the Debtor's applicable commitment period, and the Debtor provided no evidence the Trustee had proposed the modification in bad faith. The court found the provisions of 11 U.S.C. §§ 1325(a)(1) and (a)(3) had been satisfied.

29. Regarding feasibility of the proposed modification requiring a lump sum payment of $68,000.00, the Debtor testified that she only had approximately $56,000.00 of the Trust Proceeds remaining in her possession. The Debtor also testified about how she spent a portion of the Trust Proceeds. She repaid a friend who had fixed the motor and transmission of the Hyundai the amount of $15,000.00.[10] The Debtor's bank accounts were overdrawn, so she repaid approximately $600.00 to restore those accounts. The Debtor and her minor daughter had unforeseen medical bills, including copayments for the daughter's back surgery, totaling approximately $1,200.00 to $1,300.00. The Debtor spent $400.00 on new eyeglasses. The Debtor was $1,350.00 behind on rent for her residence, so she paid that amount to her landlord. The Debtor was approximately $500.00 behind on her utility bills and cured those arrears. The Debtor also testified that she anticipates additional medical expenses for herself and her daughter in the future.

30. The court found that the Debtor should not be permitted to challenge the feasibility of a modification that would have been feasible *but for* the Debtor's own uncontrolled spending. From May 6, 2020 when the Debtor received the Trust Proceeds until the date of the hearing, the Debtor depleted the Trust Proceeds at an average rate of nearly $648.00 per day. Of course, a large portion of the Trust Proceeds was spent in a single day when the court approved the Debtor's

---

[10] The Debtor did not explain at the hearing why she spent $15,000.00 to repair a vehicle worth $12,025.00 on the Petition Date according to the Debtor's schedules.

purchase of a brand-new vehicle costing $38,000.00.  The Trustee even explained at the hearing on the Motion to Modify that he did not oppose the Debtor's purchase of a new vehicle back in May 2020, because he calculated that after purchasing a vehicle, the Debtor still would have sufficient funds to pay her unsecured creditors in full in the event of a subsequent modification of the Plan.

31.  The court found that the Motion to Modify should be allowed, with the proposed lump sum payment due in September 2020 instead of August 2020 as proposed.[11]  The court modified the Plan to require $7,395.00, as paid to the Trustee through July 2020, followed by a lump sum payment of $68,000.00 to the Trustee in September 2020, followed by $300.00 per month for 42 months, beginning September 2020, for a plan base of $87,995.00.

END OF DOCUMENT

---

[11] In the Motion to Modify, the Trustee requested "any other, or alternative, relief as is just and proper in this case for the specific purpose of modifying the Plan."